Request of House of Representatives, No. 5345.

## OPINION OF THE JUSTICES.

Submitted March 2, 1965.

Answer returned March 10, 1965.

The following resolution was adopted by the House of Representatives February 17, 1965 and filed in this court on February 18, 1965:

"WHEREAS, there are pending before the House of Representatives House Bill No. 153, An Act relating to voluntary corporations and associations, and House Bill No. 154, An Act to enable the State of New Hampshire, or any political subdivisions thereof, to accept gifts or bequests of industrial facilities and to lease or otherwise dispose of the same, and

"Whereas, House Bill No. 154, with the proposed amendments creates a new chapter to be known as RSA 162-D, Acquisition and Disposal of Industrial Facilities, and if enacted into law, would enable a non-profit corporation to issue its revenue obligations, secured by a long term lease, to construct an industrial facility and would authorize the State of New Hampshire or any of its political subdivisions to acquire title to such industrial facility by gift from such non-profit corporation and to lease, sell or convey the industrial facility to any person, firm, partnership or corporation, public or private, and

"Whereas, under Article 12 of Part First, Article 5 of Part Second and other provisions of the Constitution of New Hampshire and under the Fourteenth Amendment to the Constitution of the United States, public funds may not be used for private ends, and

"Whereas, questions have arisen as to the constitutionality of the proposed act, now, therefore, be it

"Resolved, that the Justices of the Supreme Court be respectfully requested to give their opinion upon the following questions of law:

"1. Is the acquisition by the State of New Hampshire or by a political subdivision thereof, by gift, of an industrial facility as defined in the proposed legislation, and the leasing, sale, or conveyance of such industrial facility by the State of New Hampshire or its political subdivision to any person, firm, partnership, or corporation, public or private, as authorized by the proposed legislation, a public purpose?

"2. Does the undertaking authorized by the proposed legislation constitute the lending of money or credit by a political subdivision of the State of New Hampshire to or for the benefit, directly or indirectly, of a corporation having for its object a dividend or profit?

"3. If the answer to question number 1 is in the affirmative and if the answer to question 2 is in the negative, is the proposed legislation otherwise constitutional?

"Be it further resolved that the Speaker transmit seven copies of this resolution, of House Bill No. 153, of House Bill No. 154, and proposed amendments to the Clerk of the Supreme Court for consideration by said court."

The following answer was returned:

*To the House of Representatives:*

The Justices of the Supreme Court make the following reply to your request for advice with respect to House Bill Nos. 153 and 154, with proposed amendments to the latter bill.

House Bill No. 153 would amend RSA 292:1 so as to permit the organization of a voluntary corporation for the purpose of providing "industrial, commercial, manufacturing and warehouse facilities for the purpose of developing the growth and prosperity of the state, counties, cities, towns and villages"; and would also amend RSA ch. 295, relating to "General Powers of Corporations," to permit a corporation subject to that chapter to incur liabilities and to issue, refund and secure its notes, bonds or "other obligations" by mortgage or pledge "of all . . . of its property, franchises and income." The bill would further amend the last mentioned chapter to permit such a corporation to enter into lease agreements in order to carry out corporate purposes. This bill by itself discloses no constitutional infirmities.

House Bill No. 154 is entitled "An act to enable the State of New Hampshire, or any political subdivisions thereof, to accept gifts or bequests of industrial facilities and to lease or otherwise dispose of the same." It would amend the Revised Statutes Annotated by enacting a new chapter which would authorize the State, or its counties or municipalities to acquire by gift industrial facilities as therein defined, and to lease the same to any "public or private" entity upon terms to be fixed by the legislative body of a county or municipality, or by a designated State agency in the case of the State.

Under sections 4 and 5 as contained in the proposed amendment to this bill, title to an "industrial facility" may be acquired only if the Governor and Council shall have determined prior to construction of the facility that "the construction of such industrial facility will serve a public use and provide a public benefit." *S.* 5. Such a determination "shall be made," provided certain preliminary findings are first made, the nature of which will be more specifically considered. *Id.*

Under section 6 of the amendment, the authority granted "to operate an industrial facility" would be limited to operation "as the lessor thereof."

Under section 7 of the bill, any industrial facility owned as provided by section 3 would be "declared to be public property . . . exempt from all taxes . . . ; provided that in lieu of such

taxes the state or any political subdivision thereof may require any lessee . . . to make payment to the county or municipality in which [the] facility is located for highway maintenance, fire protection or other services."

Your resolution inquires whether the acquisition of an industrial facility and the lease or sale of the same to a public or private entity as provided by the bill would be "a public purpose," and whether such an undertaking would "constitute the lending of money or credit by a political subdivision of the State . . . to or for the benefit, directly or indirectly, of a corporation having for its object a dividend or profit."

This inquiry recognizes that under the Constitution expenditures of public funds may be made only for public purposes (Const., Pt. I, *Art.* 12th; Pt. II, *Art.* 6th) (see *Opinion of the Justices*, 85 N. H. 562; *Opinion of the Justices*, 99 N. H. 536); and that Part II, Article 5th of the Constitution expressly provides that the General Court "shall not authorize any town to loan or give its money or credit directly or indirectly for the benefit of any corporation having for its object a dividend of profits or in any way aid the same by taking its stocks or bonds."

Your questions relate primarily to House Bill No. 154 and proposed amendments thereto, which in some respects would parallel provisions found in RSA ch. 162-A, considered in preliminary form by *Opinion of the Justices*, 99 N. H. 528. House Bill No. 424, then under consideration, was thought to be constitutionally objectionable for lack of standards for determination that a particular undertaking would "serve the public purpose" and for want of provision for authoritative findings that the undertaking would be within the stated purpose of the act. *Id.,* 531, 532. See also, *Opinion of the Justices*, 103 N. H. 258.

The fundamental inquiry is whether the proposal will be primarily of benefit to private persons or private uses, which is forbidden, or whether it will serve public purposes although private benefits may incidentally result. *Opinion of the Justices*, 99 N. H. 528, 530, *supra.* "The prosperity of a particular private industry may be a matter of public concern, but such an industry may not be aided at the expense of the state." *Opinion of the Justices*, 88 N. H. 484, 486. Memoranda filed in support of the bills suggest that the constitutionality of House Bill No. 154 may be supported upon grounds considered in *Opinion of the Justices*, 99 N. H. 528, *supra*, and *Opinion o*

*the Justices*, 103 N. H. 258, *supra*, relating to the proposed legislation which as subsequently amended now appears as RSA chapter 162-A (establishing the Industrial Park Authority).

It is true that by the proposed amendment to House Bill No. 154, it would be required that prior to construction of any facility the Governor and Council first find that the facility will serve a public use and provide a public benefit. The bill would require such a finding by the Governor and Council if certain subsidiary findings were first made, namely, that unemployment will be prevented, that the building will be suitable, that it will be leased or owned by a financially responsible party, that the cost of construction will be met without expense to the public, and that construction of the facility will contribute to development and prosperity of the State or subdivision.

These provisions, if taken literally, would require advance approval by the Governor and Council without regard to whether the proposed use of the facility under lease, which might well be for a long term, as distinguished from mere construction of the facility, would also serve the public use and provide a public benefit. Furthermore a finding that none of the cost of construction would fall upon the public, would not answer the question of whether costs of upkeep and maintenance, and other expenses commonly encountered by property owners would or would not be met from public coffers. Rentals might be barely adequate to meet the amortized costs of construction.

The standards provided to govern the determination required of the Governor and Council appear to be deficient in other respects as well. The legislation relating to the Industrial Park Authority, pursuant to suggestions made in *Opinion of the Justices*, 99 N. H. 528, *supra*, requires a finding that the project will be "within the authority conferred upon [the] corporation." RSA 162-A:8. See RSA 481:7. This is an essential requirement to such legislation. *Conway v. Water Resources Board*, 89 N. H. 346, 353-354.

Further constitutional objections arise out of the provision found in section 7 of the proposed amendment, under which the facility would be exempt from taxation, but the public body involved "may" require the lessee or occupant to make payment "for highway maintenance, fire protection or other services," in lieu of taxes. A somewhat parallel provision was contained in the bill considered in *Opinion of the Justices*, 99 N. H. 528, *supra*, but was not expressly considered, in view of other defects

existing in the bill. The payment of taxes was not there left to the discretion of political subdivisions.

In our opinion the provision of sections 5 and 7 of the amendment to House Bill No. 154 would not be adequate to preclude violation of Part I, *Art.* 12th and Part II, *Arts.* 5th and 6th of the Constitution. Thus a corporation for profit which leased an industrial facility might indirectly be relieved of the payment of any taxes for a substantial period of time, should the rental charged be merely equivalent to the bare value of the use, and should no agreement for payment in lieu of taxes be required. See RSA 481:14, *supra;* RSA 72:11; *Manchester* v. *Auburn*, 102 N. H. 325. In such a case the lessee, as compared with other industries within the taxing district, might be relieved of payment of its just share of the public expense (Const., Pt. I, *Art.* 12th, *supra*) and so indirectly receive the benefit of money which the town or county would otherwise receive from taxes. Const., Pt. II, *Art.* 6th, *supra.*

As was said in *Conway* v. *Water Resources Board*, 89 N. H. 346, 354, *supra*, "A particular project is within the policy if it is of 'public use and benefit'; in determining this issue the inquiry is not of law, but of fact." In our judgment, the proposed act would permit this fact to be determined upon inadequate criteria, and thus permit violation of the constitutional policy that public funds shall not be expended for private purposes.

We therefore answer your first question in the negative, because there is no certainty that acquisition and leasing of a facility as authorized by the proposed bill would be more than incidentally for a public purpose. For like reasons your second question is answered in the affirmative. The undertaking might enable a private industry to avoid its share of the public expense, thus in effect constituting an indirect loan or gift of public money. *Eyers Woolen Co.* v. *Gilsum*, 84 N. H. 1, 9. In view of the foregoing answers, the third question requires no answer.

FRANK R. KENISON.
LAURENCE I. DUNCAN.
AMOS N. BLANDIN, JR.
EDWARD J. LAMPRON.
STEPHEN M. WHEELER.

March 10, 1965.

186

*William E. Nolin*, for the bills.

*Cleveland, Waters & Bass*, for Eagle Publications, Inc., for the bills.

*William Maynard*, Attorney General, *George S. Pappagianis*, Deputy Attorney General and for Governor's Special Committee on Industrial Development, for the bills.

*Dudley W. Orr, Charles H. Toll, Jr.* and *Ronald L. Snow*, opposed.

*Thomas W. Gerber*, General Manager, The Concord Daily Monitor, opposed.